Shaun Setareh (SBN 204514)
shaun@setarehlaw.com
Bradley Fagnani (SBN 261330)
bradley@setarehlaw.com
SETAREH LAW GROUP
420 N. Camden Drive, Suite 100
Beverly Hills, California 90210
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiffs O.G., S.G., and G.G., and the Proposed Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

O.G., S.G., and G.G., minors, by and through their guardian ad litem, NOAM GONEN, individually and on behalf of all others similarly situated,

*Plaintiffs,*

v.

EDUCATIONAL TESTING SERVICE, a New York not-for-profit corporation,

*Defendant.*

Case No.:

**CLASS ACTION COMPLAINT FOR:**

1. Negligence;
2. Invasion of Privacy (Cal. Const., art. I, § 1);
3. Breach of Contract (Third-Party Beneficiary);
4. Violation of the Unfair Competition Law (Bus. & Prof. Code § 17200 *et seq.*); and
5. Declaratory and Injunctive Relief (28 U.S.C. §§ 2201–2202)

**JURY TRIAL DEMANDED**

Plaintiffs O.G., S.G., and G.G., minors, by and through their guardian ad litem Noam Gonen (the "Minor Plaintiffs" or "Plaintiffs"), individually and on behalf of all others similarly situated, allege as follows against Defendant Educational Testing Service ("ETS" or "Defendant"). Plaintiffs' allegations are based on personal knowledge as to themselves and their own acts and experiences, and on information and belief, including the investigation of counsel and publicly available information, as to all other matters.

## INTRODUCTION

1. This class action arises from a massive compromise of the education records of California's schoolchildren. For nearly four months, from May 22, 2026 through September 18, 2026, an unauthorized party repeatedly logged into a file-transfer server operated by ETS and copied files containing personal information about California public school students.

2. ETS is the State of California's contractor for statewide student assessments. It administers the California Assessment of Student Performance and Progress ("CAASPP") and the English Language Proficiency Assessments for California ("ELPAC"), which are given to students enrolled in California public schools. To perform that work, ETS collects and maintains extensive personal information about California's schoolchildren.

3. According to ETS's own Notice of Data Breach, the compromised information concerns California students "including but not limited to all students enrolled in the three previous school years."[1] The California Department of Education ("CDE") has stated that the affected population also includes certain students who left California schools as far back as 2006.[2] The affected population therefore numbers in the millions.

4. The stolen files were not limited to names and addresses. Depending on the student, they included dates of birth; residential addresses; school, district, and grade level; Statewide Student Identifiers and local student identifiers; gender, race or ethnicity, primary language, and

---

[1] Educational Testing Service, *Notice of Data Breach*, Cal. Dep't of Educ., https://www.cde.ca.gov/nr/in/ets-notification.asp (last visited Oct. 26, 2026) (the "Notice"). A true and correct copy of the Notice is attached as Exhibit A.

[2] Cal. Dep't of Educ., *ETS Incident Information*, https://www.cde.ca.gov/nr/in/ets-incident.asp (last visited Oct. 26, 2026).

country of origin; English learner status; disability and Section 504 status, testing accommodations, and primary disability type; eligibility for programs serving low-income, migrant, homeless, and military-connected students; and assessment results.

5. Much of this is among the most sensitive information that exists about a child. It reveals whether a child has a disability and what kind, whether a child is homeless, whether a child's family is low-income or migrant, where the child was born, and where the child lives. A child cannot change their date of birth, their disability history, or their country of origin. Children are also uniquely attractive targets for identity theft because they have no credit history and fraud committed in their names often goes undetected for years.

6. According to ETS, the intruder got in with a single "compromised login credential." ETS did not detect the intrusion while it was happening. It identified the unauthorized activity on September 25, 2026, one week after the copying had ended. Families did not begin receiving notice until October 16, 2026, nearly five months after the intrusion began, and ETS and CDE have stated that notices will continue to go out into November 2026.

7. The breach was the foreseeable result of ETS's failure to implement and maintain reasonable data security. A single stolen credential was enough to let an outsider return to ETS's server again and again for nearly four months and copy files on millions of children without being detected. That could not have happened if ETS had required effective multi-factor authentication, monitored for anomalous access and bulk downloading, and limited the data it kept to what it actually needed.

8. ETS has offered affected students two years of credit and identity monitoring. That offer does not compensate Plaintiffs and Class members for the harm they have suffered, and it does not come close to matching the duration of the risk. The information stolen here is permanent, and many affected children will not open a credit account or apply for a loan for many years.

9. ETS continues to receive and hold Plaintiffs' and Class members' information. ETS remains the State's assessment contractor, and the information of currently enrolled students, including the Minor Plaintiffs, continues to flow to ETS each school year. Plaintiffs bring this action on behalf of themselves and all similarly situated current and former students to recover

damages and to obtain injunctive and declaratory relief requiring ETS to secure the information it continues to hold.

## PARTIES

### A. Plaintiffs

10. Plaintiffs O.G., S.G., and G.G. are minors and residents of Venice, Los Angeles County, California. O.G., age 17, is in the 11th grade at Palisades Charter High School. S.G. and G.G., each age 13, are in the 8th grade at Paul Revere Charter Middle School. Each attends a public school within the Los Angeles Unified School District ("LAUSD"), and each was enrolled in a California public school during each of the three school years preceding the Data Breach. O.G. attended Paul Revere Charter Middle School in the 2023–24 school year and Palisades Charter High School in the 2024–25 and 2025–26 school years. S.G. and G.G. attended Coeur d'Alene Avenue Elementary School in the 2023–24 school year and Paul Revere Charter Middle School in the 2024–25 and 2025–26 school years. The Minor Plaintiffs sue by and through their father and proposed guardian ad litem, Noam Gonen, a resident of Venice, Los Angeles County, California. Pursuant to Federal Rule of Civil Procedure 5.2(a)(3), the Minor Plaintiffs are identified by initials only.

11. On October 16, 2026, LAUSD emailed its families, including Noam Gonen, informing them of the ETS data security incident and directing them to ETS's Notice posted on CDE's website. Because each Minor Plaintiff was enrolled in a California public school during each of the three school years preceding the Data Breach, each falls within the population that ETS's Notice states was affected: California students "including but not limited to all students enrolled in the three previous school years." As of the date of this Complaint, Plaintiffs have not received an individual notice from ETS. CDE has acknowledged that some affected individuals may not receive a letter.

### B. Defendant

12. Defendant Educational Testing Service is a not-for-profit corporation organized under the laws of the State of New York, with its principal place of business at 660 Rosedale Road, Princeton, New Jersey 08541. ETS is a citizen of New York and New Jersey. ETS develops,

administers, and scores educational assessments, and contracts with the State of California to provide state- and federally-required testing to students enrolled in California public schools.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because (a) the proposed Class consists of more than 100 members; (b) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) at least one member of the proposed Class, including each Plaintiff, is a citizen of a State different from Defendant. Plaintiffs are citizens of California, and Defendant is a citizen of New York and New Jersey.

14. This Court has personal jurisdiction over ETS because ETS purposefully availed itself of the privilege of doing business in California. ETS contracts with the State of California to administer California's statewide assessment programs; collects, receives, and maintains the personal information of California students through that work; operated the file-transfer site used to exchange California assessment information with CDE; and directed the conduct at issue toward California. Plaintiffs' claims arise out of and relate to those California contacts.

15. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2). ETS resides in this District for venue purposes because it administers statewide assessments to students enrolled in schools throughout this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District. Plaintiffs reside in this District, their personal information was collected through their schools in this District and transmitted to ETS in connection with ETS's California work, and Plaintiffs and many Class members suffered injury in this District.

16. Plaintiffs reside in Los Angeles County, and assignment to the Western Division of this District is appropriate.

## FACTUAL ALLEGATIONS

**A. ETS Administers California's Statewide Student Assessments and Holds Data on Millions of California Children**

17. ETS is one of the largest educational assessment organizations in the world. It holds itself out as a nonprofit, but it is a substantial enterprise that operates through a network of affiliates and subsidiaries.

18. ETS is under contract with the State of California to provide state- and federally-required testing to all students enrolled in California public schools, including the CAASPP and the ELPAC.

19. To administer and report those assessments, ETS receives, stores, and processes personal information about every tested student, including demographic information, program participation information, disability and accommodation information, and assessment results. ETS and CDE exchanged that information using a secure file transfer protocol ("SFTP") site operated by ETS.

20. Students and their families have no choice in the matter. Participation in statewide assessments is required, and the information at issue was provided to ETS by or on behalf of the State and local educational agencies for the limited purpose of administering, scoring, and reporting those assessments. Plaintiffs and Class members entrusted their information to the public school system on the understanding that it, and any contractor receiving it, would keep the information confidential and secure.

21. ETS knew it was entrusted with highly sensitive information about children. Its own Notice of Data Breach states that "ETS takes the security of student information with the utmost seriousness."

22. ETS was also legally obligated to protect the information. Among other things, California law required ETS, as a business that owns, licenses, or maintains personal information about California residents, to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect it from unauthorized access, use, and disclosure. (Cal. Civ. Code § 1798.81.5(b); *see also id.* § 1798.80(a) [defining "business" to

include entities whether or not organized to operate at a profit].) The Private Information described below includes students' names together with their primary disability type and Section 504 status, which is information regarding the students' medical history or diagnosis and constitutes "medical information" under that statute. (*Id.* § 1798.81.5(d)(1)(A), (d)(2).) California's Student Online Personal Information Protection Act imposes the same obligation on operators of online services used primarily for K-12 school purposes. (Cal. Bus. & Prof. Code § 22584(d)(1).) On information and belief, ETS is such an operator: it operates the online systems through which California public schools register students for, administer, and report the CAASPP and ELPAC, systems that ETS knows are used primarily for K-12 school purposes and that were designed and marketed for those purposes. On information and belief, ETS's contract with CDE likewise required ETS to safeguard student information, comply with the Family Educational Rights and Privacy Act and state privacy law, and implement specified data security controls.

**B. The Data Breach**

23. On September 25, 2026, ETS identified unauthorized activity involving the SFTP site it used to exchange California statewide assessment information with CDE.

24. ETS's investigation determined that "an unauthorized party used a compromised login credential at various times during the period from May 22, 2026 to September 18, 2026 to access the SFTP site to copy files containing California student information" (the "Data Breach").

25. The intruder accessed the SFTP site repeatedly over a period of nearly four months. ETS did not detect the activity while it was occurring and did not identify it until a week after it had ended.

26. According to ETS, "[i]nformation about California students, including but not limited to all students enrolled in the three previous school years, was accessed and copied." CDE has further stated that the affected population includes students who left a California school since 2006 and did not confirm a transfer to another school with CDE.

27. More than 5.7 million students were enrolled in California public schools in the 2025–26 school year alone.[3] Including students enrolled in prior years and former students, the Data Breach affects millions of current and former California students (collectively, with Plaintiffs, "Class members").

28. According to ETS, the information accessed and copied varies by individual but may include:

(a) student name, date of birth, residential address, school, district, and grade level;

(b) Statewide Student Identifier (SSID) and local student identifier;

(c) gender, race or ethnicity, primary language, country of origin, and English learner status;

(d) disability and Section 504 status, testing accommodations, and primary disability type;

(e) eligibility status for Title I, Part A; Title I, Part C (migrant education); McKinney-Vento (homeless education); and Military Connected Student programs; and/or

(f) English language proficiency information and statewide assessment registration, participation, and results.

(collectively, "Private Information").

29. On October 2, 2026, CDE notified county and district superintendents and charter school administrators that ETS had reported an incident involving ETS-operated systems, and that ETS had halted normal enrollment data processing and paused certain testing activities while the security of its systems was assessed.[4]

30. On October 16, 2026, ETS, at CDE's direction, began notifying affected students and families. ETS and CDE have stated that notifications will continue through early November

---

[3] *California state testing data breach may impact millions of students, officials say*, CBS San Francisco (Oct. 20, 2026), https://www.cbsnews.com/sanfrancisco/news/california-state-testing-ets-data-breach-impact-millions-of-students-officials-say/ (last visited Oct. 26, 2026).

[4] Letter from Mary Nicely, Deputy Superintendent of Public Instruction, Cal. Dep't of Educ., to County and District Superintendents and Charter School Administrators (Oct. 2, 2026), https://www.cde.ca.gov/nr/in/yr26inltr1002.asp (last visited Oct. 26, 2026).

2026.[5] CDE has also acknowledged that some affected individuals may never receive a letter because their contact information is outdated.

31. The Notice is deficient. It does not disclose how the login credential was compromised, whether the credential was protected by multi-factor authentication, why ETS failed to detect nearly four months of unauthorized access, why ETS held data on students who left California schools as long ago as 2006, or what specific measures ETS has taken to prevent a recurrence beyond building a new SFTP site. Without that information, Plaintiffs and Class members cannot fully assess or mitigate their risk.

32. ETS's notice states that ETS has not, "to date," uncovered evidence that the information has been made public. That statement provides no assurance. The intruder deliberately and repeatedly accessed the SFTP site over a period of months and copied the files. Data stolen in this manner is taken for a purpose, and stolen personal information is commonly held, sold, or traded privately before, or instead of, being posted publicly. As the U.S. Government Accountability Office has reported, "law enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft," and "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[6]

33. ETS has not stated that it recovered the copied files, identified the intruder, or obtained any assurance that the files were destroyed. Replacing the SFTP site does not retrieve data that has already been copied.

34. Apart from building a new SFTP site, ETS has announced few if any changes to the security practices that permitted the Data Breach, and it has not disclosed what it has done to prevent a stolen credential from again giving an outsider access to student data.

---

[5] Cal. Dep't of Educ., News Release No. 26-45 (Oct. 16, 2026), https://www.cde.ca.gov/nr/ne/yr26/yr26rel45.asp (last visited Oct. 26, 2026).

[6] U.S. Gov't Accountability Off., GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

35. ETS has offered affected students two years of Experian IdentityWorks monitoring. For minors, that product is designed to alert families if a credit file appears in the child's name; it does not prevent the misuse of a child's information, does not address the exposure of non-financial information such as disability, homelessness, or country-of-origin information, and expires long before many affected children will apply for credit for the first time. ETS's offer of monitoring, and its warnings to families about targeted phishing, reflect ETS's own recognition that the theft creates a real risk of misuse.

**C. ETS Failed to Implement Reasonable Data Security**

36. The Data Breach was the direct and foreseeable result of ETS's failure to implement reasonable, industry-standard security measures appropriate to the sensitivity and volume of the information it held.

37. ETS has admitted that a single compromised login credential gave an unauthorized party access to the SFTP site at various times over nearly four months, that the intruder copied files containing California student information during that period, and that ETS did not identify the activity until a week after it ended. Those admitted facts show that ETS:

(a) permitted access to an SFTP site containing records on millions of children through a credential that, once stolen, was sufficient by itself to gain access, meaning ETS did not require effective phishing-resistant multi-factor authentication, IP address restrictions, or other controls that would have rendered a stolen credential useless;

(b) failed to adequately monitor the SFTP site, log and review access, and detect anomalous logins and repeated bulk downloads of student data over a period of nearly four months;

(c) failed to limit the volume and type of data available through the SFTP site and to limit the credential's access to only the data necessary for its function;

(d) retained student data, including data on former students going back as far as 2006, longer than reasonably necessary for any assessment purpose, and failed to delete or de-identify data it no longer needed; and

(e) failed to detect that a credential had been compromised and to promptly disable it.

38. On information and belief, ETS also failed to encrypt the data at rest on the SFTP site or otherwise render it unusable to an unauthorized party, failed to promptly rotate or expire credentials, and failed to adequately train its personnel and vendors regarding credential security and phishing.

39. Each of these safeguards is a well-established, widely adopted, and inexpensive practice. Federal guidance from the Federal Trade Commission ("FTC") has long advised organizations to limit the personal information they collect and retain, to control and limit access to sensitive data, to require secure authentication, to monitor for unauthorized activity, including large amounts of data being transmitted from their systems, and to dispose of data they no longer need.[7] The Cybersecurity and Infrastructure Security Agency ("CISA") has urged organizations to require multi-factor authentication for all remote access to their networks and for privileged or administrative access.[8] These practices are also reflected in widely accepted frameworks, including the National Institute of Standards and Technology Cybersecurity Framework.

40. The FTC has also treated the failure to use reasonable and appropriate measures to protect consumers' personal information as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

41. ETS knew or should have known that its systems were an attractive target. Education institutions and education-technology vendors have been repeatedly targeted by cybercriminals in recent years, and those incidents have been widely publicized. In September 2022, LAUSD itself, the district the Minor Plaintiffs attend, suffered a ransomware attack.[9] In 2025, the Judicial Panel on Multidistrict Litigation centralized litigation arising from unauthorized access to the student information system of the education-technology vendor PowerSchool, which

---

[7] Fed. Trade Comm'n, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.bulkorder.ftc.gov/system/files/publications/2_9-00006_716a_protectingpersinfo-508.pdf.

[8] *See, e.g.*, Cybersecurity & Infrastructure Sec. Agency, *Shields Up: Guidance for Organizations*, https://www.cisa.gov/shields-guidance-organizations (last visited Oct. 26, 2026).

[9] Carly Page, *Everything we know so far about the ransomware attack on Los Angeles schools*, TechCrunch (Sept. 9, 2022), https://techcrunch.com/2022/09/09/los-angeles-schools-ransomware/ (last visited Oct. 26, 2026).

held information about current and former students.[10] And a breach at the education-technology vendor Illuminate Education, which exposed California students' information, was litigated all the way to the California Supreme Court.[11] ETS, an organization whose business is the collection and handling of student information, was well aware of these threats and of the heightened sensitivity of children's data.

**D. Plaintiffs' and Class Members' Injuries**

42. Plaintiffs and Class members have been injured by the Data Breach. Their Private Information was deliberately targeted and copied by an unauthorized third party, and it is now outside their control and in the hands of criminals.

43. Children's information is particularly valuable to identity thieves. A child's identity typically has no existing credit history, so a thief can combine a child's name, date of birth, and address with other information to open accounts, obtain government benefits, or create synthetic identities, and that fraud often goes undetected until the child applies for credit, a job, a student loan, or an apartment years later. As the FTC explains, a child under 18 generally will not have a credit report, and the warning signs of child identity theft often surface only later, for example when the child is turned down for a student loan because of credit problems the child did not cause.[12]

44. The absence of Social Security numbers from the stolen files does not make the information harmless. Identity thieves routinely combine data from multiple breaches and public sources to build complete identity profiles, enriching partial records until they are sufficient to commit fraud. A verified link between a particular child's name, date of birth, home address, and school is a valuable anchor for that kind of profile. Those same details are used to answer security questions, to pass identity verification, and to persuade institutions and family members that a criminal is who he claims to be.

---

[10] Transfer Order, *In re PowerSchool Holdings, Inc., & PowerSchool Grp., LLC Customer Data Sec. Breach Litig.*, MDL No. 3149 (J.P.M.L. Apr. 7, 2025).

[11] *See J.M. v. Illuminate Educ., Inc.*, No. S286699 (Cal. May 14, 2026).

[12] Fed. Trade Comm'n, *How To Protect Your Child From Identity Theft*, https://consumer.ftc.gov/articles/how-protect-your-child-identity-theft (last visited Oct. 26, 2026).

45. The Private Information is also exactly the type of information used in targeted phishing, impersonation, and social-engineering schemes. Armed with a child's name, school, grade, address, and program participation, a criminal can convincingly impersonate a school, district, or testing organization to families. ETS's own notice warns recipients to be cautious of unexpected emails, texts, and calls that reference a student's school, statewide assessments, or the incident.

46. Beyond financial fraud, the Data Breach exposed information that can cause harm on its own: a child's disability and type of disability, Section 504 status, homelessness, migrant or low-income program eligibility, English learner status, and country of origin. This is not the kind of basic contact information that people routinely share. It is confidential information about children's health, disabilities, family circumstances, and national origin of the kind traditionally protected by the law of privacy. Exposure of this information subjects Plaintiffs and Class members to the risk of discrimination, harassment, stigma, embarrassment, blackmail, exploitation, and targeting, and to emotional distress, regardless of whether any account is ever opened in their names.

47. Because the Private Information was deliberately stolen, Plaintiffs and Class members face a substantial, imminent, and continuing risk of identity theft, fraud, and other misuse. That risk will persist for years, and in many cases for decades, because the most important data elements, such as name, date of birth, the schools a child attended, and disability and demographic history, cannot be changed.

48. Class members, and the parents and guardians acting for minor Class members, have spent and will continue to spend time responding to the Data Breach, including reviewing the Notice, enrolling in monitoring, placing credit freezes and fraud alerts, monitoring accounts, and screening and responding to suspicious communications. These are the very steps ETS's Notice encourages recipients to take, and they are what a reasonable person would do after learning that a child's information has been stolen.

49. As a result of the Data Breach, Plaintiffs and Class members have suffered or will suffer injuries including: (a) invasion of privacy and loss of the confidentiality of, and control over,

their Private Information; (b) a substantial and imminent risk of identity theft and fraud; (c) lost time and effort responding to the Data Breach, as described above; (d) out-of-pocket costs for identity-protection and monitoring services beyond those ETS has offered, including monitoring through and beyond the age of majority for minor Class members; (e) emotional distress, anxiety, embarrassment, and fear; (f) diminution in the value of their Private Information; and (g) the continued risk to their Private Information, which remains in ETS's possession and is subject to further compromise unless ETS implements adequate safeguards.

**E. Plaintiffs' Experiences**

50. The Minor Plaintiffs. On information and belief, the Minor Plaintiffs' information maintained by ETS includes each child's name, date of birth, residential address, school, district, and grade level; Statewide Student Identifier and local student identifier; gender, race or ethnicity, primary language, and country of origin; and statewide assessment registration, participation, and results. To Plaintiffs' knowledge, the Minor Plaintiffs' information has not been compromised in any other data breach. Noam Gonen is concerned that the Minor Plaintiffs' information will be used to open fraudulent credit lines and enter into contracts and other transactions in their names without their knowledge or consent, and that the family will now have to watch for that misuse indefinitely.

51. Each Minor Plaintiff has personally suffered the invasion of his or her privacy and the loss of confidentiality and control of his or her Private Information, and faces a continuing risk of identity theft, fraud, and targeted phishing because of the theft of that information.

52. Plaintiffs would not have permitted ETS to maintain their Private Information had they known ETS would fail to protect it. Plaintiffs' Private Information remains in ETS's possession, the Minor Plaintiffs' information will continue to be provided to ETS for as long as they remain enrolled in California public schools and ETS remains the State's assessment contractor, and Plaintiffs have a continuing interest in ensuring that it is protected and, where no longer necessary, deleted.

## CLASS ACTION ALLEGATIONS

53. Plaintiffs bring this action under Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of the following class (the "Class"):

> All individuals whose personal information was accessed or copied in the data security incident involving ETS's SFTP site that ETS identified on or about September 25, 2026, including all individuals to whom ETS sent notice of that incident.

54. Plaintiffs also seek to represent the following subclass:

> Minor Subclass: All members of the Class who were under 18 years of age at the time of the Data Breach. (The Minor Plaintiffs are the proposed representatives.)

55. Excluded from the Class are ETS; its officers, directors, and affiliates; any entity in which ETS has a controlling interest; ETS's legal representatives, successors, and assigns; and the judicial officers to whom this action is assigned and their immediate families and staff. Plaintiffs reserve the right to modify the Class and subclass definitions as discovery proceeds.

56. Numerosity. The Class consists of millions of individuals. Joinder of all members is impracticable. Class members can be identified from ETS's and CDE's records, including the records ETS used to send notice.

57. Commonality. Common questions of law and fact exist and predominate over any individual questions, including:

(a) whether ETS owed Plaintiffs and Class members a duty to use reasonable care to safeguard their Private Information;

(b) whether ETS's data security practices were reasonable in light of the sensitivity and volume of the information it held and industry standards;

(c) whether ETS required effective multi-factor authentication and other access controls for the SFTP site;

(d) whether ETS adequately monitored the SFTP site and why it failed to detect the intrusion for nearly four months;

(e) whether ETS retained Private Information longer than reasonably necessary;

(f) whether ETS breached its duties to Plaintiffs and Class members;

(g) whether ETS's conduct constituted a serious invasion of Class members' privacy;

(h) whether Plaintiffs and Class members are intended third-party beneficiaries of ETS's contract with CDE, and whether ETS breached that contract;

(i) whether ETS's conduct was unlawful or unfair under the UCL;

(j) whether Plaintiffs and Class members are entitled to damages and the measure of those damages; and

(k) whether Plaintiffs and Class members are entitled to injunctive and declaratory relief.

58. Typicality. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs' Private Information was compromised in the same Data Breach, as a result of the same conduct by ETS, and Plaintiffs assert the same legal theories as all Class members.

59. Adequacy. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests antagonistic to the Class, and they have retained counsel experienced in complex class action litigation. The Minor Plaintiffs' guardian ad litem, Noam Gonen, is committed to protecting the Minor Plaintiffs' interests and those of the Minor Subclass.

60. Rule 23(b)(2). ETS has acted or refused to act on grounds that apply generally to the Class, including by failing to implement adequate security and by continuing to hold Class members' Private Information, so that final injunctive and declaratory relief is appropriate for the Class as a whole.

61. Rule 23(b)(3). Common questions predominate over individual questions because ETS's liability turns on its own uniform conduct and data security practices. A class action is superior to other methods of adjudication because individual damages are small relative to the cost of litigating against a large organization, individual suits by millions of current and former students would be impracticable and risk inconsistent results, and the Class is readily identifiable from ETS's records.

62. Rule 23(c)(4). In the alternative, particular issues, including ETS's duty, breach, and the adequacy of its data security, are appropriate for class treatment.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**NEGLIGENCE**

**(On Behalf of Plaintiffs and the Class)**

63. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

64. ETS collected, received, and maintained Plaintiffs' and Class members' Private Information in the course of its business. Plaintiffs and Class members have no contract with ETS, did not negotiate with ETS, and are not parties to any agreement allocating the risk of loss of their information. ETS's duty to them does not depend on any contract; it arises independently from the relationship, statutes, and circumstances described below.

65. Under California law, everyone is responsible for an injury caused to another by his or her want of ordinary care or skill in the management of his or her property. (Cal. Civ. Code § 1714(a).) ETS voluntarily undertook to receive, store, process, and transmit Plaintiffs' and Class members' Private Information. ETS is compensated by the State for that work and could not perform its assessment contract, or earn that compensation, without the Private Information. Having chosen to take custody of sensitive information about millions of children, ETS was obligated to exercise reasonable care to protect it. That ETS received the information from CDE and local educational agencies rather than from the students themselves does not diminish its duty; the students are the people whose information ETS holds and the people who are harmed when ETS fails to protect it.

66. ETS owed Plaintiffs and Class members a duty to exercise reasonable care in obtaining, retaining, securing, safeguarding, and deleting their Private Information, and in monitoring its systems to detect and respond to unauthorized access.

67. That duty arose from, among other things: (a) the special relationship between ETS and Plaintiffs and Class members, who were required to participate in statewide assessments and whose information ETS held for the specific purpose of serving them, including by scoring each student's assessments; (b) the foreseeability of harm, given the sensitivity of the information, the fact that most data subjects are children, and the well-known threat of cyberattacks on education

systems; (c) ETS's exclusive control over its systems and its ability to prevent the harm at reasonable cost, a burden that is modest compared with the consequences to millions of children; and (d) the policy of preventing future harm. The transaction between ETS and the State was intended to affect Plaintiffs and Class members, the harm to them was foreseeable, they have suffered injury, ETS's conduct is closely connected to that injury, and ETS bears moral blame for failing to protect children's information.

68. ETS's duty of care is also informed by statutes designed to protect individuals in Plaintiffs' position from the type of harm that occurred, including California Civil Code section 1798.81.5 and Business and Professions Code section 22584, as well as Section 5 of the FTC Act, 15 U.S.C. § 45. ETS's violations of these provisions are evidence of its negligence and give rise to a presumption of negligence under California Evidence Code section 669.

69. ETS breached its duty by, among other things, the acts and omissions described above, including failing to require effective multi-factor authentication and other access controls; failing to monitor and detect the intrusion over a period of nearly four months; failing to limit, encrypt, and minimize the data available through the SFTP site; and retaining data longer than necessary.

70. ETS's breaches of duty were a substantial factor in causing the Data Breach and Plaintiffs' and Class members' injuries. But for ETS's failures, the intruder could not have used a single compromised credential to access and copy Plaintiffs' and Class members' Private Information over a period of months. The harms Plaintiffs allege, including the risk of identity fraud built on a child's name, date of birth, and address, phishing that exploits a child's school and testing information, and the exposure of disability and family information, flow directly from the specific categories of information taken in the Data Breach.

71. Plaintiffs' and Class members' injuries are not purely economic. They include the invasion of their privacy; the loss of the confidentiality of sensitive information about their health, disabilities, and family circumstances; loss of control over their identities; lost time; increased phishing and other suspicious contacts; the risk of embarrassment, stigma, and discrimination; and emotional distress.

72. As a direct and proximate result of ETS's negligence, Plaintiffs and Class members have suffered and will continue to suffer the injuries described above, and are entitled to compensatory, general, and nominal damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**INVASION OF PRIVACY**

**(Cal. Const., art. I, § 1)**

**(On Behalf of Plaintiffs and the Class)**

73. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

74. Article I, section 1 of the California Constitution guarantees all people the inalienable right of privacy, and that right is enforceable against private entities.

75. Plaintiffs and Class members have a legally protected privacy interest in their Private Information, including their dates of birth, home addresses, disability and Section 504 status and primary disability type (which is health and medical information about the student), homelessness and other program eligibility, English learner status, country of origin, and assessment results. This interest in precluding the dissemination and misuse of sensitive and confidential information is at the core of the constitutional right to informational privacy.

76. Plaintiffs and Class members had a reasonable expectation of privacy in their Private Information. The information was compiled by public schools from children who were required to attend school and to participate in statewide assessments, and it was entrusted to ETS for the limited purpose of administering those assessments. Plaintiffs and Class members reasonably expected that the information would be kept confidential, secured against unauthorized access, and retained only as long as necessary.

77. ETS's conduct constituted a serious invasion of Plaintiffs' and Class members' privacy. This was not a single lapse. ETS made deliberate choices: it chose to retain data on former students for many years, in some cases since 2006, after any assessment purpose had ended; it chose to keep a repository of sensitive information on millions of children accessible through a single credential; and it chose not to implement the monitoring that would have revealed an intruder returning to that repository again and again over nearly four months. ETS acted with at

least deliberate indifference to the privacy of the children whose records it held. ETS's conduct was an egregious breach of the social norms governing the handling of children's educational and disability records.

78. ETS has no legitimate countervailing interest that justifies its conduct, and reasonable, readily available measures would have prevented the invasion.

79. As a direct and proximate result of ETS's conduct, Plaintiffs and Class members have suffered injuries including loss of control over their Private Information, harm to their constitutional right to privacy, lost time, the need for future protective expenses, emotional distress, and the other injuries described above, and are entitled to damages and injunctive relief.

## THIRD CAUSE OF ACTION

## BREACH OF CONTRACT — THIRD-PARTY BENEFICIARY

**(On Behalf of Plaintiffs and the Class)**

80. Plaintiffs incorporate the preceding paragraphs as if fully set forth here, except those inconsistent with this cause of action. This cause of action is pleaded in the alternative to the First Cause of Action.

81. ETS entered into one or more written contracts with CDE and/or the State Board of Education to provide statewide assessment services for California public school students (the "Assessment Contract").

82. On information and belief, the Assessment Contract required ETS to, among other things, maintain the confidentiality and security of student information; comply with the Family Educational Rights and Privacy Act, California privacy and data security law, and the State's information security requirements; implement specified administrative, technical, and physical safeguards; restrict access to student information to authorized persons; retain student information only as necessary and destroy it when no longer needed; and promptly report and respond to security incidents.

83. Plaintiffs and Class members are intended third-party beneficiaries of those provisions. The data privacy and security provisions exist to protect the students whose information ETS receives. Plaintiffs and Class members would in fact benefit from ETS's

performance of those provisions; a motivating purpose of the contracting parties in including them was to protect Plaintiffs and Class members; and permitting Plaintiffs and Class members to enforce them is consistent with the objectives of the contract and the reasonable expectations of the contracting parties, because the students are the only persons whose privacy those provisions protect and the State itself suffers little direct loss when students' information is stolen.

84. ETS breached the Assessment Contract by failing to implement and maintain the required safeguards, by retaining student information longer than necessary, and by failing to prevent, detect, and timely respond to the Data Breach.

85. As a direct and proximate result of ETS's breaches, Plaintiffs and Class members have suffered damages, including out-of-pocket protective costs and lost time, and are entitled to compensatory and nominal damages.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE UNFAIR COMPETITION LAW**

**(Cal. Bus. & Prof. Code § 17200 *et seq.*)**

**(On Behalf of Plaintiffs and the Class)**

86. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

87. ETS is a "person" within the meaning of Business and Professions Code section 17201.

88. Unlawful. ETS engaged in unlawful business acts and practices by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the Private Information, in violation of Civil Code section 1798.81.5(b) and Business and Professions Code section 22584(d)(1), and by engaging in unfair practices prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

89. Unfair. ETS engaged in unfair business acts and practices by maintaining inadequate security over the sensitive information of millions of children, retaining that information longer than necessary, and failing to detect a months-long intrusion. The harm caused by this conduct greatly outweighs any utility; reasonably available alternatives, such as multi-factor authentication, access monitoring, and data deletion, would have prevented it at modest cost;

the conduct offends established public policy reflected in California's data security and student privacy statutes; and Plaintiffs and Class members could not reasonably have avoided the injury, because they had no control over ETS's security and no choice about whether their information was provided to ETS.

90. Plaintiffs and Class members suffered injury in fact and lost money or property as a result of ETS's unlawful and unfair practices. Plaintiffs' and Class members' Private Information is property that has value, and its theft has diminished that value. Class members who have paid for identity-protection and monitoring services or other protective measures have also lost money.

91. Plaintiffs lack an adequate remedy at law for the harm this cause of action addresses. Damages cannot require ETS to implement adequate security, to delete information it no longer needs, or to protect the information of currently enrolled students that will continue to be provided to ETS each school year. Only injunctive relief can prevent that future harm.

92. Plaintiffs and Class members seek injunctive relief under Business and Professions Code section 17203, including public injunctive relief, requiring ETS to implement and maintain adequate data security, to delete or de-identify Private Information it no longer needs, and to provide adequate identity-protection services.

## FIFTH CAUSE OF ACTION

## DECLARATORY AND INJUNCTIVE RELIEF

## (28 U.S.C. §§ 2201–2202)

## (On Behalf of Plaintiffs and the Class)

93. Plaintiffs incorporate the preceding paragraphs as if fully set forth here.

94. An actual controversy exists between Plaintiffs and Class members, on the one hand, and ETS, on the other, concerning ETS's present and ongoing duties to safeguard the Private Information it continues to hold and whether its current security practices are adequate to meet those duties.

95. ETS continues to possess Plaintiffs' and Class members' Private Information and continues to receive the information of currently enrolled students each school year, including enrollment data that ETS processes for the State, as CDE's October 2, 2026 letter reflects. O.G. is

in the 11th grade, and S.G. and G.G. are in the 8th grade, grades in which California students take the CAASPP, so their information will continue to be provided to the State's assessment contractor, which is currently ETS. Plaintiffs seek prospective injunctive relief to secure their information that remains in ETS's possession and to protect the information ETS will receive about them in the future. ETS has disclosed few details about the cause of the Data Breach or the measures it has taken in response beyond building a new SFTP site, and Plaintiffs and Class members remain at risk of further compromise.

96. Plaintiffs seek a declaration that (a) ETS owes a legal duty to secure Plaintiffs' and Class members' Private Information and to delete information it no longer needs; (b) ETS's existing data security measures do not comply with that duty; and (c) ETS must implement and maintain reasonable security measures, including, without limitation: phishing-resistant multi-factor authentication for all access to systems containing student data; continuous monitoring, logging, and alerting for anomalous access and data exfiltration; encryption of student data at rest and in transit; least-privilege access controls; data-minimization and deletion policies for data on former students and data no longer needed for assessment purposes; regular independent security audits and penetration testing, with results reported to the Court or a monitor; and identity-protection services for affected minors that last until a reasonable period after each minor reaches the age of majority.

97. Without this relief, Plaintiffs and Class members will suffer irreparable injury because their information will remain exposed to further compromise. The hardship to Plaintiffs and Class members of another breach far outweighs the cost to ETS of implementing reasonable security measures, and the public interest in protecting the information of California's schoolchildren strongly favors the requested relief.

98. Plaintiffs also seek corresponding injunctive relief under 28 U.S.C. § 2202 and the Court's equitable powers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for judgment against Defendant as follows:

1. For an order certifying the Class and subclass under Rule 23, appointing Plaintiffs as Class representatives, and appointing their counsel as Class counsel;
2. For compensatory, consequential, general, and nominal damages in an amount to be proven at trial;
3. For declaratory relief as described above;
4. For injunctive relief requiring ETS to, among other things: (a) implement and maintain a comprehensive information security program, including phishing-resistant multi-factor authentication, access monitoring and logging, encryption, network segmentation, and least-privilege access controls; (b) delete or de-identify Private Information that ETS no longer needs, including information on former students, unless ETS demonstrates to the Court a reasonable justification for retaining it; (c) submit to annual assessments by a qualified, independent third-party assessor for ten (10) years, with results reported to the Court and Class counsel; (d) train its personnel and vendors on credential security; (e) provide identity-protection and monitoring services to minor Class members until a reasonable period after each reaches the age of majority; (f) take reasonable steps to notify affected individuals whose contact information is outdated; and (g) disclose to Class members the nature and cause of the Data Breach;
5. For pre-judgment and post-judgment interest as permitted by law;
6. For reasonable attorneys' fees and costs, including under California Code of Civil Procedure section 1021.5 and any other applicable law; and
7. For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial of their claims by jury to the extent authorized by law.

Dated: October 26, 2026 SETAREH LAW GROUP

*/s/ Bradley Fagnani*

SHAUN SETAREH
BRADLEY FAGNANI
Attorneys for Plaintiffs
O.G., S.G., and G.G., and the Proposed Class

# Exhibit A

California DEPARTMENT OF EDUCATION



# Educational Testing Service (ETS) Notification

For more information about the ETS data security incident, including frequently asked questions and available resources, visit CDE's ETS Incident Information page.

## Notice of Data Breach

Educational Testing Service (ETS), at the direction of the California Department of Education (CDE), is notifying California students and families about a data security incident involving unauthorized access to and copying of student data from an ETS secure file transfer protocol (SFTP) site, the steps being taken to protect their personal information, and available resources and support. Appropriate law enforcement agencies have been notified, but their investigations have not delayed this notice.

ETS is a nonprofit assessment organization under contract with the State of California to provide state and federally required testing to all students enrolled in California public schools. ETS supports California's statewide assessment programs, including the California Assessment of Student Performance and Progress (CAASPP) and the English Language Proficiency Assessments for California (ELPAC).

We are notifying you because you or your minor dependent's personal information was accessed and copied during this data security incident.

**To help protect affected current and former students, ETS is providing complimentary identity-protection services through Experian IdentityWorks for 2 years.**

## What Happened?

On September 25, 2026, ETS identified unauthorized activity involving an SFTP site used to exchange California statewide assessment information with CDE.

ETS disabled the account involved, took the affected SFTP site offline, and initiated an investigation with the assistance of external cybersecurity experts. The investigation determined that an unauthorized party used a compromised login credential at various times during the period from May 22, 2026 to September 18, 2026 to access the SFTP site to copy files containing California student information.

## What Information Was Involved?

Information about California students, including but not limited to all students enrolled in the three previous school years, was accessed and copied. The information that was accessed and copied contained student demographic, program participation, and assessment data that ETS maintains in connection with California's statewide assessment programs.

The student information accessed and copied varies by individual, but may include:

- Student name, date of birth, residential address, school, district, and grade level;
- Statewide Student Identifier (SSID) and local student identifier;
- Gender, race or ethnicity, primary language, country of origin, and English learner status;
- Disability and Section 504 status, testing accommodations, and primary disability type;
- Eligibility status for the following programs: Title I, Part A; Title I, Part C; McKinney-Vento; and Military Connected Student; and/or
- English language proficiency information and statewide assessment registration, participation, and results, where applicable.

**The data accessed and copied did not include Social Security numbers, driver's license numbers, passport numbers, financial account information, credit or debit card information, or account passwords. The incident did not involve parent or guardian personal information.**

## What We Are Doing

### ETS Response

Following discovery of the incident, ETS has taken numerous measures to enhance the security of the SFTP site, including taking the SFTP site offline and building an entirely new SFTP site with enhanced security controls. ETS continues to evaluate additional security measures that may be appropriate.

After working with law enforcement as well as with cybersecurity experts, ETS has taken steps to reduce the potential risk of the data being made publicly accessible. Furthermore, ETS, following regular web monitoring, has, to date, not uncovered any evidence that the information has been made public.

### State Response

CDE and the State Board of Education (SBE) are working with state cybersecurity experts to assess the effect on California students and families and so that affected individuals receive appropriate information and support.

The California Cybersecurity Integration Center (Cal-CSIC) is assisting with digital forensics and incident response support. The California Department of Technology (CDT) and California Governor's Office of Emergency Services (Cal OES) are also supporting the state's technical, legal,

and operational response.

CDE and SBE are also reviewing the incident and ETS's compliance with applicable data security and contractual requirements.

## Complimentary Identity-Protection Services Through Experian

To help protect affected current and former students, ETS is providing identity-protection services through Experian IdentityWorks for 2 years at no cost to you.

Two identity-protection services packages are available, one for minors and one for current and former students who are now adults.

**Minor Plus - For affected students under age 18:** A parent or legal guardian can enroll the student in the available minor identity-protection services on or before the enrollment deadline on March 19, 2027. Minors who turn 18 between now and March 19, 2029 may enroll in the adult product upon their 18th birthday by using the adult product activation code. **For information on how to sign minors up for this product, see the Attachment to this Notice.**

**Adult - For affected individuals age 18 or older:** Affected adults can enroll directly in the available Experian IdentityWorks services before the enrollment deadline on or before March 19, 2027. **For information on how to sign up for this product as an adult, see the Attachment to this Notice.**

**There is no cost to you to enroll, and no credit card information will be requested.**

## What You Can Do

We encourage you to consider enrolling affected students in the identity protection services and remain alert to possible misuse of student personal information. Be cautious of fake identity protection sites by double checking URLs before providing information.

It is always best practice to be cautious of unexpected emails, text messages, or phone calls that reference a student's school, statewide assessments, or this incident. Do not share personal information, passwords, or financial information in response to unsolicited requests.

Affected students and their families may also consider reviewing additional information about identity theft and protecting personal information available from the California Department of Justice's Privacy Enforcement and Protection Unit at www.oag.ca.gov/privacy.

## For More Information

CDE, 1430 N Street, Sacramento, CA 95814, has established www.cde.ca.gov/ets with information and updates about this data security incident. The webpage will be updated if additional information becomes available. This notification is available in multiple languages on the webpage.

ETS takes the security of student information with the utmost seriousness, and sincerely regrets this incident occurred. If you have questions about this incident, please call 833-931-8488, Monday through Friday, 6:00 a.m. to 6:00 p.m. Pacific Time, excluding major U.S. holidays. If you have a speech or hearing impairment and use a TTY, please call 711. **Please be prepared to provide your engagement number, B174774 for students under 18, or, B174775 for students 18 or over.**

## Notification Translations

- In English: www.cde.ca.gov/nr/in/documents/etsdatabreach-english.pdf
- Esta notificación está disponible en español en el sitio web del Departamento de Educación de California en www.cde.ca.gov/nr/in/documents/etsdatabreach-spanish.pdf.
- 本通知提供简体中文版，请访问加州教育厅网站：www.cde.ca.gov/nr/in/documents/etsdatabreach-mandarin.pdf。
- Thông báo này có bằng tiếng Việt trên trang web của Bộ Giáo dục California tại www.cde.ca.gov/nr/in/documents/etsdatabreach-vietnamese.pdf.
- 本通知提供繁體中文版，請瀏覽加州教育廳網站：www.cde.ca.gov/nr/in/documents/etsdatabreach-cantonese.pdf。
- Այս ծանուցումը հասանելի է հայերեն Կալիֆոռնիայի կրթության դեպարտամենտի կայքում՝ www.cde.ca.gov/nr/in/documents/etsdatabreach-armenian.pdf հասցեով:
- این اطلاعیه به زبان فارسی در وب‌سایت اداره آموزش و پرورش کالیفرنیا به نشانی www.cde.ca.gov/nr/in/documents/etsdatabreach-farsi.pdf در دسترس است.
- 이 안내문은 캘리포니아주 교육부 웹사이트(www.cde.ca.gov/nr/in/documents/etsdatabreach-korean.pdf)에서 한국어로 제공됩니다.
- ਇਹ ਸੂਚਨਾ ਕੈਲੀਫੋਰਨੀਆ ਡਿਪਾਰਟਮੈਂਟ ਆਫ਼ ਐਜੂਕੇਸ਼ਨ ਦੀ ਵੈੱਬਸਾਈਟ www.cde.ca.gov/nr/in/documents/etsdatabreach-punjabi.pdf 'ਤੇ ਪੰਜਾਬੀ ਵਿੱਚ ਉਪਲਬਧ ਹੈ।
- دا خبرتیا د کالیفورنیا د پوهنې د ریاست په ویب پانه www.cde.ca.gov/nr/in/documents/etsdatabreach-pashto.pdf کې په پښتو ژبه شتون لري.
- Это уведомление доступно на русском языке на веб-сайте Департамента образования Калифорнии по адресу www.cde.ca.gov/nr/in/documents/etsdatabreach-russian.pdf.
- هذا الإشعار متاح باللغة العربية على الموقع الإلكتروني لإدارة التعليم في كاليفورنيا على العنوان www.cde.ca.gov/nr/in/documents/etsdatabreach-arabic.pdf.
- Daim ntawv ceeb toom no muaj ua lus Hmoob nyob rau ntawm lub vev xaib ntawm California Department of Education ntawm www.cde.ca.gov/nr/in/documents/etsdatabreach-hmong.pdf.
- ఈ నోటిఫికేషన్ కాలిఫోర్నియా విద్యా శాఖ వెబ్‌సైట్ www.cde.ca.gov/nr/in/documents/etsdatabreach-telugu.pdf లో తెలుగులో అందుబాటులో ఉంది.
- הודעה זו זמינה בעברית באתר האינטרנט של משרד החינוך של קליפורניה בכתובת www.cde.ca.gov/nr/in/documents/etsdatabreach-hebrew.pdf.
- Ang abisong ito ay makukuha sa Tagalog sa website ng Kagawaran ng Edukasyon ng California sa www.cde.ca.gov/nr/in/documents/etsdatabreach-tagalog.pdf
- Cet avis est disponible en français sur le site Web du Département de l'Éducation de Californie à l'adresse www.cde.ca.gov/nr/in/documents/etsdatabreach-french.pdf.

- この通知は、カリフォルニア州教育局のウェブサイト（www.cde.ca.gov/nr/in/documents/etsdatabreach-japanese.pdf）で日本語でご覧いただけます。
- Ogeysiiskan waxaa lagu heli karaa af-Soomaali bogga internetka ee Waaxda Waxbarashada California ee www.cde.ca.gov/nr/in/documents/etsdatabreach-somali.pdf.
- Це повідомлення доступне українською мовою на вебсайті Департаменту освіти Каліфорнії за адресою www.cde.ca.gov/nr/in/documents/etsdatabreach-ukrainian.pdf.
- ဤအသိပေးချက်ကို ကယ်လီဖိုးနီးယားပြည်နယ် ပညာရေးဌာန၏ ဝက်ဘ်ဆိုက် www.cde.ca.gov/nr/in/documents/etsdatabreach-burmese.pdf တွင် မြန်မာဘာသာဖြင့် ရရှိနိုင်ပါသည်။
- यह सूचना कैलिफ़ोर्निया शिक्षा विभाग की वेबसाइट www.cde.ca.gov/nr/in/documents/etsdatabreach-hindi.pdf पर हिंदी में उपलब्ध है।
- សេចក្តីជូនដំណឹងនេះមានជាភាសាខ្មែរ នៅលើគេហទំព័ររបស់នាយកដ្ឋានអប់រំរដ្ឋកាលីហ្វ័រញ៉ា តាមរយៈ www.cde.ca.gov/nr/in/documents/etsdatabreach-khmer.pdf ។
- እዚ ሓበሬታ ብትግርኛ ኣብ መርበብ ሓበሬታ ክፍሊ ትምህርቲ ካሊፎርንያ www.cde.ca.gov/nr/in/documents/etsdatabreach-tigrinya.pdf ይርከብ።
- Bu bildirim, Kaliforniya Eğitim Departmanı'nın www.cde.ca.gov/nr/in/documents/etsdatabreach-turkish.pdf adresindeki web sitesinde Türkçe olarak mevcuttur.
- Tzaj t-ponin tun t-tzaj t-xil tun Mam toj t-k'u'l California Department of Education toj
  - For Mam, please refer to the Spanish version of this notification on the California Department of Education’s website at www.cde.ca.gov/nr/in/documents/etsdatabreach-spanish.pdf. If you need more help, please contact your child’s school.
- Koro tixiko ka'an tu'un Mixteco web do CDE.
  - For Mixteco, please refer to the Spanish version of this notification on the California Department of Education’s website at www.cde.ca.gov/nr/in/documents/etsdatabreach-spanish.pdf. An audio version in Mixteco is also available: www.cde.ca.gov/nr/in/media/etsdatabreach-mixteco.mp3.
- ܐܵܗܵܐ ܡܘܼܕܥܵܢܘܼܬܵܐ ܐܝܼܬܵܗ̇ ܒܠܸܫܵܢܵܐ ܟܲܠܕܵܝܵܐ ܥܲܠ ܦܲܪܨܘܿܦܵܐ ܕܡܲܕܒܪܵܢܘܼܬܵܐ ܕܝܘܼܠܦܵܢܵܐ ܕܟܵܠܝܼܦܘܿܪܢܝܵܐ ܒ
  - For Chaldean, please refer to the Arabic version of this notification on the California Department of Education’s website at www.cde.ca.gov/nr/in/documents/etsdatabreach-arabic.pdf. An audio version in Chaldean is also available: www.cde.ca.gov/nr/in/media/etsdatabreach-chaldean.mp3.

## FOR STUDENTS UNDER 18 - ADDITIONAL DETAILS REGARDING THE 24-MONTH EXPERIAN IDENTITYWORKS MEMBERSHIP

To help protect your minor dependent’s identity, we are offering complimentary access to Experian IdentityWorksSM for 24 months.

If you believe there was fraudulent use of your minor dependent’s information as a result of this incident and would like to discuss how you may be able to resolve those issues, please reach out to an Experian agent. If, after discussing your situation with an agent, it is determined that identity restoration support is needed, then an Experian Identity Restoration agent is available to work with

you to investigate and resolve each incident of fraud that occurred from the date of the incident (including, as appropriate, helping you with contacting credit grantors to dispute charges and close accounts; assisting you in placing a freeze on your credit file with the three major credit bureaus; and assisting you with contacting government agencies to help restore your identity to its proper condition).

Please note that Identity Restoration is available to you for 24 months from the date of this letter and does not require any action on your part at this time. The Terms and Conditions for this offer are located at www.ExperianIDWorks.com/restoration.

While identity restoration assistance is immediately available to you, we also encourage you to activate the fraud detection tools available through Experian IdentityWorks as a complimentary 24-month membership. This product provides you with superior identity detection and resolution of identity theft. To start monitoring your minor dependent's personal information, please follow the steps below:

- Ensure that you **enroll by** March 19, 2027 (Your code will not work after this date.)
- Visit the Experian IdentityWorks website to enroll: https://www.experianidworks.com/minorplus
- Provide your **activation code**: RSWMV3F3N
- Provide your minor child's information when prompted

If you have questions about the product, need assistance with Identity Restoration that arose as a result of this incident or would like an alternative to enrolling in Experian IdentityWorks online, please contact Experian's customer care team at 833-931-8488 by March 19, 2027. Be prepared to provide engagement number B174774 as proof of eligibility for the Identity Restoration services by Experian.

## ADDITIONAL DETAILS REGARDING YOUR STUDENT'S 24-MONTH EXPERIAN IDENTITYWORKS MEMBERSHIP

A credit card is **not** required for enrollment in Experian IdentityWorks.

You can contact Experian **immediately** regarding any fraud issues, and have access to the following features once you enroll in Experian IdentityWorks:

- **Social Security Number Trace:** Monitoring to determine whether enrolled minors in your household have an Experian credit report. Alerts of all names, aliases and addresses that become associated with your minor's Social Security Number (SSN) on the Experian credit report.
- **Internet Surveillance:** Technology searches the web, chat rooms & bulletin boards 24/7 to identify trading or selling of your personal information on the Dark Web.
- **Identity Restoration:** Identity Restoration specialists are immediately available to help you address credit and non-credit related fraud.
- **Experian IdentityWorks ExtendCARETM:** You receive the same high-level of Identity Restoration support even after your Experian IdentityWorks membership has expired.

- **$1 Million Identity Theft Insurance*:** Provides coverage for certain costs and unauthorized electronic fund transfers.

# FOR STUDENTS 18 AND OVER - ADDITIONAL DETAILS REGARDING THE 24-MONTH EXPERIAN IDENTITYWORKS MEMBERSHIP

To help protect your identity, we are offering a complimentary 24-month membership of Experian IdentityWorksSM. This product provides you with superior identity detection and resolution of identity theft. To activate your membership and start monitoring your personal information please follow the steps below:

This product provides you with internet surveillance, and identity theft insurance at no cost to you upon enrollment.

- Ensure that you **enroll by** March 19, 2029 (Your code will not work after this date.)
- **Visit** the Experian IdentityWorks website to enroll: https://www.experianidworks.com/identity
- Provide your **activation code**: N8MDNZPJD

If you have questions about the product, need assistance with identity restoration or would like an alternative to enrolling in Experian IdentityWorks online, please contact Experian's customer care team at 833-931-8488 by March 19, 2027. Be prepared to provide engagement number B174775 as proof of eligibility for the identity restoration services by Experian.

## ADDITIONAL DETAILS REGARDING YOUR 24-MONTH EXPERIAN IDENTITYWORKS MEMBERSHIP

A credit card is **not** required for enrollment in Experian IdentityWorks.

You can contact Experian **immediately** regarding any fraud issues, and have access to the following features once you enroll in Experian IdentityWorks:

- **Internet Surveillance**: Technology searches the web, chat rooms & bulletin boards 24/7 to identify trading or selling of your personal information on the Dark Web.
- **Identity Restoration**: Identity Restoration specialists are immediately available to help you address credit and non-credit related fraud.
- **Experian IdentityWorks ExtendCARE™**: You receive the same high-level of Identity Restoration support even after your Experian IdentityWorks membership has expired.
- $1 Million Identity Theft Insurance*: Provides coverage for certain costs and unauthorized electronic fund transfers.

*The Identity Theft Insurance is underwritten and administered by American Bankers Insurance Company of Florida, an Assurant company. Please refer to the actual policies for terms, conditions, and exclusions of coverage. Coverage may not be available in all jurisdictions.

If you believe there was fraudulent use of your information and would like to discuss how you may

be able to resolve those issues, please reach out to an Experian agent at 833-931-8488. If, after discussing your situation with an agent, it is determined that Identity Restoration support is needed, then an Experian Identity Restoration agent is available to work with you to investigate and resolve each incident of fraud that occurred (including, as appropriate, helping you with contacting credit grantors to dispute charges and close accounts; assisting you in placing a freeze on your credit file with the three major credit bureaus; and assisting you with contacting government agencies to help restore your identity to its proper condition).

Please note that this Identity Restoration support is available to you for 24 months from the date of this letter and does not require any action on your part at this time. The Terms and Conditions for this offer are located at www.ExperianIDWorks.com/restoration. You will also find self-help tips and information about identity protection at this site.

## Information About Identity Theft Protection Guide

**Contact information for the three nationwide credit reporting companies is as follows:**

| Equifax | Experian | TransUnion |
|---|---|---|
| Phone: 1-800-685-1111<br>P.O. Box 740256<br>Atlanta, Georgia 30348<br>www.equifax.com | Phone: 1-888-397-3742<br>P.O. Box 9554<br>Allen, Texas 75013<br>www.experian.com | Phone: 1-833-799-5355<br>P.O. Box 2000<br>Chester, PA 19016<br>www.transunion.com |

### Free Credit Report

We remind you to be vigilant for incidents of fraud or identity theft by reviewing your account statements and free credit reports for any unauthorized activity. If you identify any unauthorized charges on your financial account statements, you should immediately report any such charges to your financial institution. You may obtain a copy of your credit report, free of charge, once every 12 months from each of the three nationwide credit reporting companies. To order your annual free credit report, please visit www.annualcreditreport.com or call toll free at 1-877-322-8228. You can also order your annual free credit report by mailing a completed Annual Credit Report Request Form (available from the U.S. Federal Trade Commission's ("FTC") website at www.consumer.ftc.gov) to: Annual Credit Report Request Service, P.O. Box 105281, Atlanta, GA 30348-5281.

**For Colorado, Georgia, Maine, Maryland, Massachusetts, New Jersey, Puerto Rico, and Vermont residents:** You may obtain one or more (depending on the state) additional copies of your credit report, free of charge. You must contact each of the credit reporting agencies directly to obtain such additional report(s).

### Security Freeze

Security freezes, also known as credit freezes, restrict access to your credit file, making it harder for identity thieves to open new accounts in your name. You can freeze and unfreeze your credit file for free. You also can get a free freeze for your children who are under 16. And if you are someone's guardian, conservator or have a valid power of attorney, you can get a free freeze for that person, too.

How will these freezes work? Contact all three of the nationwide credit reporting agencies – Equifax, Experian, and TransUnion. If you request a freeze online or by phone, the agency must place the freeze within one business day. If you request a lift of the freeze, the agency must lift it within one hour. If you make your request by mail, the agency must place or lift the freeze within three business days after it gets your request. You also can lift the freeze temporarily without a fee.

The following information must be included when requesting a security freeze (note that if you are requesting a credit report for your spouse, this information must be provided for him/her as well): (1) full name, with middle initial and any suffixes; (2) Social Security number; (3) date of birth; (4) current address and any previous addresses for the past five years; and (5) any applicable incident report or complaint with a law enforcement agency or the Registry of Motor Vehicles. The request must also include a copy of a government-issued identification card and a copy of a recent utility bill or bank or insurance statement.

It is essential that each copy be legible, display your name and current mailing address, and the date of issue.

**For Colorado and Illinois residents:** You may obtain information from the credit reporting agencies and the FTC about security freezes.

**For New Mexico residents:** You may obtain a security freeze on your credit report to protect your privacy and ensure that credit is not granted in your name without your knowledge. You may submit a declaration of removal to remove information placed in your credit report as a result of being a victim of identity theft. You have a right to place a security freeze on your credit report or submit a declaration of removal pursuant to the Fair Credit Reporting and Identity Security Act. For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.

### Fraud Alerts

A fraud alert tells businesses that check your credit that they should check with you before opening a new account. An initial fraud alert stays on your credit report for one year. You may have an extended alert placed on your credit report if you have already been a victim of identity theft with the appropriate documentary proof. An extended fraud alert stays on your credit report for seven years. To place a fraud alert on your credit reports, contact one of the nationwide credit bureaus. A fraud alert is free. The credit bureau you contact must tell the other two, and all three will place an alert on their versions of your report.

**For Colorado and Illinois residents:** You may obtain additional information from the credit reporting agencies and the FTC about fraud alerts.

**Federal Trade Commission and State Attorneys General Offices**

If you believe you are the victim of identity theft or have reason to believe your personal information has been misused, you should immediately contact the Federal Trade Commission and/or the Attorney General's office in your home state. You may also contact these agencies for information on how to prevent or avoid identity theft. You may contact the Federal Trade Commission, Consumer Response Center, 600 Pennsylvania Avenue, NW, Washington, DC 20580, www.ftc.gov/bcp/edu/microsites/idtheft/, 1-877-IDTHEFT (438-4338).

**For Connecticut Residents:** You may contact and obtain information from your state attorney general at: Connecticut Attorney General's Office, 55 Elm Street, Hartford, CT 06106, 1-860-808-5318, www.ct.gov/ag.

**For District of Columbia Residents:** You may contact the Office of the Attorney General for the District of Columbia, 441 4th Street NW, Suite 1100 South, Washington, D.C. 20001, https://oag.dc.gov, 202-442-9828.

**For Maryland Residents:** You may contact the Maryland Office of the Attorney General, Consumer Protection Division, 200 St. Paul Place, Baltimore, MD 21202, https://www.marylandattorneygeneral.gov, 1-888-743-0023.

**For New York Residents:** You may contact the New York Department of State Division of Consumer Protection, One Commerce Plaza, 99 Washington Ave., Albany, NY 12231-0001, 518-474-8583 / 1-800-697-1220, http://www.dos.ny.gov/consumerprotection; and New York State Office of the Attorney General, The Capitol, Albany, NY 12224-0341, 1-800-771-7755, https://ag.ny.gov.

**For North Carolina Residents:** You may contact the North Carolina Office of the Attorney General, Consumer Protection Division, 9001 Mail Service Center, Raleigh, NC 27699- 9001, www.ncdoj.gov, 1-877-566-7226.

**For Rhode Island Residents:** You may contact the Rhode Island Office of the Attorney General, 150 South Main Street, Providence, RI 02903, http://www.riag.ri.gov, 401-274- 4400.

**For Texas Residents:** You may contact and obtain information from your state attorney general at: Office of the Texas Attorney General www.texasattorneygeneral.gov/consumer-protection/identity-theft or contact the Identity Theft Hotline at 800-621-0508 (toll-free).

**Reporting of identity theft and obtaining a police report**

You have the right to obtain any police report filed in the United States in regard to this incident. If you are the victim of fraud or identity theft, you also have the right to file a police report.

**For Iowa Residents:** You are advised to report any suspected identity theft to law enforcement or to the Iowa Attorney General.

**For Massachusetts Residents:** You have the right to obtain a police report if you are a victim of identity theft. You also have a right to file a police report and obtain a copy of it.

**For Oregon Residents:** You are advised to report any suspected identity theft to law enforcement, the Federal Trade Commission, and the Oregon Attorney General.

**For Rhode Island Residents:** You have the right to file or obtain a police report regarding this incident.

**Questions: 833-931-8488**

Last Reviewed: Thursday, October 22, 2026